## HOOKS v. BR. BANK AT MONTGOMERY.

1. P. C. H. executes a deed of trust to M. H. H. for a number of slaves, to protect him from liability as his security on a note held by the bank— some of the slaves are sold by the sheriff under older liens, and M. H. H. purchased them—the remainder are sold, for the purpose of paying said note, by the register, and under a decree in chancery, rendered on a bill filed by M. H. H. against P. C. H. and A.  The bank assents that the register's sale may be on a credit, the purchaser giving notes with approved security—C. became the purchaser, and gave M., S., C., and S. as securities, to whom M. H. H. and C. executed a deed of trust on all the slaves, as well those sold by the sheriff, as those sold by the register, for their indemnity, and in it, the previous deed from P. C. H. to M. H. H. is recited. The bank afterwards procures an execution in its favor against P. C. H. founded on another and distinct debt, to be levied on the slaves sold by the sheriff, and M. H. H. interposes a claim.  Held: 1st. That the chancery proceedings are not evidence against the bank.  2d. That the assent of the bank to a sale by a register on a credit, did not make it a party to the chancery proceedings, nor can it affect its right to subject the slaves levied on, to its execution.  3d. That the recital of the deed from P. C. H. to M. H. H. in the deed from M. H. H. and C. to M., S., C. and S., is not evidence to show title in M. H. H., but that if he relied on his deed from P. C. H. he should have proved not only its execution, but the *consideration thereof*, by legal evidence.  4th. That neither the chancery proceedings, the action of the bank at the register's sale, nor the deed to M., S., C. and S. separately or collectively, could estop the bank from contesting the title of M. H. H. to the slaves in controversy, nor are they evidence to show that the title had passed from P. C. H.

Error to the Circuit Court of Macon.  Before the Hon. George W. Stone.

THIS was a trial of the right of property in certain slaves, levied on under a *fieri facias*, in favor of the defendant in error, against one Peter C. Harris, as the property of said Harris, and claimed by the plaintiff in error.  The bill of exceptions found in the record, discloses the. following facts.  On the 16th day of May, 1842, the said Harris made a deed of trust, the execution of which was only proved on the trial, for a number of slaves, those in controversy included, to the

said claimant, to prosect him as the security of said Harris, on a certain note alleged to be due by him to the said branch bank. On the 5th September, 1842, the slaves in controversy, were sold, by the sheriff of Macon county, by virtue of sundry executions against said Harris, then in his hands, and said claimant became the purchaser: soon after this, one Reuben Anderson caused the remainder of the slaves named in said trust deed, to be levied on under an execution, which he had obtained against said Harris, when said claimant filed his bill in chancery to enjoin him from selling them, and for general relief. On the final hearing, the chancellor decreed in favor of said claimant's lien, and directed a sale of the negroes, for the purpose first, of paying the said note on which plaintiff was security and then the debt due to said Anderson, if any thing was left. On the first day of January, 1844, the said slaves, decreed to be sold, were exposed to sale by the register, the president of said bank being present at the sale, and representing its interests, under the following resolution of the board of directors; "Saturday, 30th Dec. 1843. *Resolved*, that the president be authorized to go to Tuskegee to attend the sale of Peter C. Harris's property, advertised to be sold by order of the chancery court, and that he be authorised to have the property sold on a credit of one and two years, for such notes, as he may approve, bearing interest from date, to the extent of the claim of the bank, and that the president be fully authorized to do any thing in the premises, he may think most for the interest of the bank." Before said sale, the president of the bank was informed of the desire of the claimant, and one Clanton, to purchase said slaves, on the said credit of one and two years, to the extent of the debt due to the bank on said note; to give notes with Lemuel Merrill, George Stone, Joseph L. Cunningham, and Arnold Seale, as securities to said bank, to the amount of their purchase; to secure said Merrill, Stone, Cunningham, and Seale, by a deed of trust on the slaves purchased by said claimant at the previous sheriff's sale, and such as they might purchase at said register's sale, and subject to this last deed of trust, to secure said slaves to the use of the wife and children of said Harris, and said president approved of and concurred in said arrangement. Said Clanton became

the purchaser of the slaves sold by said register, and soon afterwards, he and said claimant executed notes to the bank, payable in one and two years, with the said Merrill, Stone, Cunningham, and Seale, as securities—also the trust deed before referred to, to secure their payment, and subsequently a deed to said claimant in trust for the sole and seperate use of said Harris's wife and children, &c. The court charged the jury, that neither the said chancery proceedings, the action of the said president of the bank, nor the said trust deed to Merrill and others, nor any two or more of them combined, had any influence upon the question of liability, or not, of the property in controversy, to the plaintiffs execution in this case : to this charge the claimant excepted, and the same is now assigned as error

McLester, for plaintiff in error.

Cocke and Belser, for defendant.

1. It was the province of the court to direct the jury as to the effect, not only of the record and written evidence, but also of all extraneous testimony connected therewith. This was all that it did, and in doing this, it committed no error. 10 Mass. 388; 1 Watts, 453; Doe ex dem. Jones v. Fulgham, 2 Murp. 364, et ubique.

2. The court properly instructed the jury, that neither the proceedings in chancery, nor the authority delegated by the bank to John Martin, nor his acts and declarations, whilst acting under it at the register's sale, could separately or collectively affect the right of defendant in error to condemn the slaves previously sold by the sheriff as the property of Harris.—1. The defendant was neither party nor privy to the chancery proceedings, and could not be estopped thereby. 2 Smith's Lead. Cas. 477, and cases there cited; Thrasher v. Harris, 2 N. Hamp. 443; Wadsworth v. Marsh, 9 Conn. 481; Birdsall v. Hewlett, 1 Paige, 35; Jackson v. Hoffman, 9 Cow. 271; Bradshaw v. Heath, 13 Wend. 419; Collins v. Loftis, 10 Leigh, 5. 2. If defendant could be regarded as a privy, by reason of constructive or actual notice, its interest in that particular proceeding ceased at the the time of the register's sale, by a settlement of its demands, long before any

question had, or could have arisen, as to the fairness of Hooks's purchase at the sale by the sheriff. 3. The trial of the right of property in this case, involved no question as to the conclusiveness of the decree of the chancellor, so far as the property embraced in that decree is concerned. The rights to the slaves in controversy were not litigated in that proceeding, and consequently were not adjudicated. Davidson et al. v. Shipman, 6 Ala. 27; Ansley v. Pearson, 8 Ala. 431. 4. The authority of John Martin to act in the premises as the agent of the bank, was special, and the parties concerned were bound to know the extent of his authority. Story on Ag. § 72; Wood v. McCain, 7 Ala. 800; Scarborough v. Reynolds, 12 Ala. 252; 7 Johns. 390; 15 ib. 44; 6 Cow. 354; 10 Mass. 397; 26 Wend. 143, 226; 9 Peters, 607; 15 East, 407; 6 Pick. 202; 11 Mass. 29. 5. Any engagement by the agent, beyond a consent to, and an affirmance of, the register's sale, on the prescribed credit, and the taking of notes from the purchasers satisfactorily secured, was unauthorized, and not binding on his principal. Spyker v. Spence, 8 Ala. 333; Br. Bank at Mobile v. Hunt, 8 ib. 883. The general words did not enlarge his authority. Story on Ag. § 62 to 68; 1 Ala. 565; 7 ib. 800; 12 Mass. 237; 1 Pick. 215; 15 ib. 302; 1 Moore & R. 66.

3. If the charge of the court was erroneous, no injury was done thereby to the claimant. By his own case, he shows, that he had no title to the property, and that his claim was improperly interposed. McGrew v. Hart, 1 Port. 175; Frow et al. v. Downman, 11 Ala. 880. It is shown, that the debt to the bank on which Seals, Merrill, Stone and Cunningham were securities, had not been paid, that the law day of the deed of trust given to secure them had passed, and it is also shown, that the deed of trust executed by Hooks and Clanton, to Hooks, trustee of Mrs. Harris, under which the claim was interposed, was not to be operative until the bank debt was paid, and the deed of trust to Seals et als. was discharged. It will be particularly observed, that the slaves involved in the trial of the right of property were never sold by the register, but were sold by the sheriff, at which sale Hooks became the purchaser. The question, then, and the only question, that arose, was, whether the purchase of Hooks at

the sheriff's sale was not colorable and fraudulent.   Ansley
v. Carloss, 9 Ala. 973.   It is shown by the bill of exceptions,
that the entire debt due the bank, at the date of the register's
sale, including the amount due on the note on which Hooks
alone was security, and the bill of exchange on which Hooks
and Clanton were securities, amounts to $12,494 42; that
the property sold by the register under the deed of trust to
Hooks alone, amounted to $9,455; that the property sold on
the same day by the register, under the deed of trust to Clan-
ton and Hooks, amounted to $1,900; and that the property
previously sold by Hooks, under the deed of trust to himself,
amounted to $1,900; which amount he had not applied to
the bank debts.   These several sales amounted to the sum of
$13,255—$760 58 more than the amount of the bank debts:
so that the property unsold by the sheriff, added to the fund
then in the hands of Hooks, was sufficient to pay the bank
debts, and there could therefore be no inducement on the
part of the bank to procure Seals and others to become liable.
It is not pretended that the property sold above its value at
the register's sale.   The charge of the court was equivalent
to saying to the jury, that admitting the facts relied on by
the claimant to be true, they did not amount to a defence.   It
undertook to pronounce, not on the weight, but on the effect,
of the testimony.

COLLIER, C. J.—1. No question is raised upon the re-
cord, as to the *bona fides* of the purchase by the claimant or
Clanton, of the slaves, embraced by the deed, from Harris to
Hooks, which were sold under executions against Harris.
But the first inquiry to which our attention is invited, is,
whether the proceedings in chancery, set out in the bill of ex-
ceptions, tend to establish the legal title of the claimant to the
slaves in question?   It will be observed that the plaintiff in
execution was no party to these proceedings; that the bill
was filed by the claimant, to injoin Reuben Anderson for
selling under a judgment in his favor, the slaves conveyed
to the complainant, and which had not been sold under the
executions referred to, and for general relief.   The cross bill
by Anderson alleged that one of the debts professed to be se-
cured by the deed was simulated; insisted that for that cause,

the deed should be declared void *in toto*, and asked such relief as might be appropriate.   Upon the case made .by both bills, it was adjudged that the deed should be inoperative as to the debt which was objected to as merely pretended ; but in respect to the debt, for the payment of which the claimant was a surety, it was held to be entitled to priority over the judgment and execution in favor of Anderson ; the slaves were ordered to be sold, and the proceeds appropriated accordingly.

This decree merely adjusted the priority of the parties to the suit, and established the validity of the deed of Harris to Hooks, so far as it provided for the debt, for which Hooks was a surety.   True, that deed proposed to furnish an indemnity to Hooks, against the consequences of his suretyship for a debt due the plaintiff in execution by Harris ; but it did not confer on the plaintiff a benefit, or give to the bank any control over the mortgaged property.   It was, then, a security, which the mortgagee held independently of the plaintiff ; and the latter cannot, therefore, be said to be in privity with him, so as to make a decree in a cause to which the mortgagee was a party evidence against the bank.   The proceeding in chancery not being what is technically called *in rem*, and the plaintiff not being directly nor indirectly, a party to it, the decree is not conclusive against the plaintiff as to any point adjudged by it.   The Branch Bank at Montgomery v. Hodges, 12 Ala. R. 118 ; McLelland v. Ridgeway, ib. 482. It is not only not conclusive, but it is not evidence in an independent and disconnected cause against a stranger to it.

2.  The assent of the plaintiff, that the register might sell the slaves under the decree on a credit of one and two years, did not make the plaintiff a party to the proceeding.   It does not appear that it in any manner interfered, or was even aware of the chancery suit until the final decree was rendered.   We must intend then, that the interference of the plaintiff was induced by the claimant, and was intended for his benefit, by enabling him to realize a larger sum from a credit than a cash sale would produce, with the interest added.   The acquiescence by the bank, in the sale by the register, might perhaps conclude it as against a purchaser, and prevent the sale under execution of the same property, to pay another debt due the bank by Harris.   But it must be remembered that the

### Hooks v. Branch Bank at Montgomery.

property now in controversy, was not sold under the decree; it had been levied on, and sold previous to the exhibition of the bill, under writs of *fieri facias*, against Harris, which operated a lien paramount to the deed. The assent then of the bank to the credit sale of the register, cannot affect its right to subject to execution, property upon which the decree did not operate, though it was embraced by the deed.

3. The deed by Hooks and Clanton, of May 1844, by which they mortgaged to Cunningham and others, their sureties for the amount of Harris's indebtedness to the plaintiff in execution, the slaves embraced by the deed of Harris to Hooks, does not tend to establish a legal title in the claimant, which cannot be reached by the plaintiff's execution. True it indicates an assertion of right by the claimant and his co-mortgagors; but this is nothing more than a written declaration of the recitals of the mortgage, and in itself proves nothing against one who asserts an antagonistic claim. This propotition seems to us too clear to require the aid of argument to support it.

Neither the proceedings in chancery, the agency of the plaintiff in execution in respect to the property sold by the register, or the mortgage of 1844, severally or collectively, show a title in the claimant inconsistent with the evidence of ownership by the defendant in execution. They do not estop the plaintiff from controverting the claimant's title; nor are they evidence against the plaintiff in the present case, to show that the right to the slaves had passed from the defendant in execution and vested in the claimant. If the claimant relied upon the deed from Harris to himself, he should have proved its execution by legal testimony, and have shown *prima facie*, that it was sustained by a sufficient consideration. The admissions in the record of the suit in chancery are insufficient for that purpose (as we have seen) in the case before us; and the interference of the plaintiff at the register's sale, and the mortgage of 1844, do not tend to establish either of these facts.

True, the act of 1812 declares, that in trials of the right of property, under the statute, the burthen of sustaining the issue should be on the plaintiff in execution; but the effect of evidence adduced by the plaintiff can only be met and over-

come by such proof as is admissible according to legal rules. We have considered the question presented for revision, and have but to add that the judgment of the circuit court is affirmed.

CHILTON, J. not sitting.